Lee Horner for the appellants and Kevin McQuillan for the appellee. Welcome back Mr. Horner. Do you want to reserve some time in this case? Five minutes please. And I want to thank the panel for setting these all at one time so we're not bouncing back and forth with three different cases. Okay. This is a complicated case. It's rather straightforward. Was there an intent to harm? That's what it boils down to, A6. The original action was A2 fraud and different things. But it boiled down and the court found that there was an intent to do harm. We suggest the record does not show that. This was an enterprise that was going right down the drain. They were losing money left and right. The plaintiff was in fact paid 400-some thousand dollars. And this is all about several months of unpaid salary. So the question of Dr. Jones' intent, that's a question of fact, right? It would be. Okay. So we're talking about a clear error review here. We're clear error, right. And we'd have to look at the whole record to determine that, right. Exactly. So that's the sum and substance of it. The one thing that was troublesome was the court hung her hat on the one comment in an email sent to the CPA that said we got him trapped. That was in January. Ten or 11 months after that, the man was paid $100,000. It was sent out of frustration. But the problem was Dr. Jones wasn't examined on that. The CPA was. They said did you get this email. Yeah, I did. Here's what it says. I have a bone to pick with you on that. You could have examined Dr. Jones on that, couldn't you? Well, it's a case of you want to really bring something to light that they're not going to make a big deal out of or not. Well, you made that tactical judgment. I did. I did. Is the other side obligated to present a damning piece of evidence and then give the other guy a chance to explain that away? Well, I think it's constitutional, Your Honor. Notice an opportunity to object, to say no, that's not true. What did you mean by that anyway? But it was admitted. It was an admitted exhibit, yeah. So it's in evidence. It is. You have to further ask your opposing party, did you mean what you said? Or what did you mean by that? Is there a constitutional requirement? Well, since he was the author of the email, that's what it would have been, I would think, the procedurally proper thing to do. What did you mean by that anyway? That's not procedural. You made a tactical judgment not to ask him about it because you didn't want to put more light on it. Right. Wouldn't it be reasonable for the other side to make almost exactly the same tactical judgment? It's not going to get any better for the other side than that email. Well, that's true, but then if you look at the rest of the record, it's not like they didn't pay him at all. You know, we got him trapped, that's what that would suggest. No, no, they paid him as much as they could. The trapped goes directly to the intent, doesn't it? I mean, it's not the trapped doesn't go to we should have paid him 600, we're only paying him four over time. Trapped goes to right now, we've got him over a barrel, we can make him do something that we think he's otherwise not motivated to do, and that causes harm. I mean, that's the context of trapped, isn't it? Or is it something else? You'd have to harmonize that with, well, did you pay him anything or not after you made that statement? Because trapped would suggest we're going to pay everybody else, we're going to pay the mortgage. Oh, by the way, you said that too. Yeah, you raised that. But the point is this was not a profitable enterprise. I mean, it lost money that last year they were open, they just had to close the doors, that's all there was to it. It went steadily down. I mean, there's a dispute in the record about that. But the point is at the end of the day, Jones was not dragging money out of there at the expense of the enterprise. If you look at our chart that we put together based on the evidence, opening brief nine, we go down, here's what Patel was paid, here's what Jones took out. And Patel was always paid bigger money than Jones was right down the line that last year. Well, he was there doing work, right? He was still doing work, yes. Okay. That's correct. Anything else, gentlemen? I got no questions. All set. Thank you so much. Thank you. Rick Willett. Yes, thank you. Your Honor, in terms of the evidence, I think if we look at Judge Winery's order on this, which we put in to the record, that she actually went through and referred to the evidence on this. And so the court did a two-part test. Was the defendant's debtors conduct tortious under state law? Then the court must also determine whether it's willful or malicious. The only thing that defendant disputed was the finding of intent and whether his acts were done without just cause or excuse. So the judge went through and specifically found that the record overwhelmingly reflects that Dr. Jones willfully and intentionally acted with target malice and tortiously interfered with the agreement. That's at 1-PE 013-22 through 14-2. And she also found that he had both a subjective motive to injure Dr. Patel and believed the injuries were substantially certain to occur. And she went through all the evidence. She went through no dispute that all other employees and independent contractors were paid. She went through the extensive communications between Dr. Jones and Mr. Squire that were admitted into evidence. And it's more than just this January of 2013 email, the trapped email. She went through a whole series of what she referred to as the 2013 directives that specifically went through and told Mr. Squires who was really running the business, and that's not been contested, because Dr. Jones had decided he was going to move to Arizona and start other businesses. And the other thing she found on this also was that not only, Mr. Horner talks about, oh, look, he was only paid this much out of there. He does not go into the extensive payments that the judge referred to as being siphoned out of the business for his personal benefit. And those included that things of the nature, he received distributions and loans from the business and made contributions to his retirement accounts. He admitted even though he relocated to Arizona and was no longer performing services in Illinois, he effectively received a monthly salary from SVO for orthodontic services through another business. And between August of 2011 and July of 2013, he directed the transfer of $81,000 from the business to his Arizona entity, which then transferred funds to or for the benefit of Dr. Jones and or his family. And it goes on. The business paid the mortgage on his personal timeshare, which he recorded as rent. At the end of the years 11, 12, and 13, there was cash on hand in the amounts of $38,000, $29,000, $21,000. And Jones owed in excess of $32,000 to the business. And these amounts in there would have been sufficient to pay Dr. Patel. Dr. Patel was paid late. There were specifically we referred to in here, there were promises made to Dr. Patel. If you continue to work, we'll pay you. Even after his contract expired, they asked him to stay on until another orthodontist could come in and then we'll pay you. And if you look at these 2013 directives, March 21st, 2013, summary, continue to not pay his full monthly salary without communicating to him to this. This to him. Pay him relative to collections. Pay root cheer. That's the plaintiff. Less, not more until things get better. Ensure creditors are paid but not root cheer. One minute later, same day, March 21st of 2013, Dr. Jones tells Mr. Squire, you must be paid. I must be paid. The girls must be paid. The suppliers must be paid. And the creditors must be paid. So even Mr. Squires, who was running the business, and we put in evidence how much money he was paid. So it was deliberate on his part. And the judge referred to all this evidence when she went through this. And she emphasized that her findings were supported by the extensive communications from Dr. Jones to Mr. Squires that were admitted into evidence. Those communications consisted of 77 pages of e-mails and their attachments, including the one e-mail that Jones complains about. Even without that one e-mail, the record supports her finding of intent. And this part about the economy of the practice, the only thing they showed were declining collections by the practice. There was a lot of money out there. Those collections were not part of Patel's job responsibilities. They were the responsibilities of Squires and the office staff. Jones offered no exhibits to support a claim that the business was going down the drain, while the exhibits offered and admitted by the plaintiff clearly showed cash reserves available to pay the plaintiff. His chart is inadmissible, as we went back and showed, because he's referring to exhibits who were not even admitted into evidence. We showed that as part of that earlier. So, in summary on that, I'm not waiving my argument that there were so many defects and violations by defendants that the court, without even getting to any of the facts, could affirm the amended judgment or dismiss the appeal. And I really think that the plaintiff is entitled to sanctions. I had to go through and put together the entire record in a proper way, annotate it, refer to it. There was no record put in there by Mr. Horner or his client. So, in conclusion, the amended judgment and memorandum decision are supported by the law and the facts. The judge committed no error. And again, we're looking at this for clearly erroneous. Did she do something that was so far out there? All that evidence she specifically reviewed and relied on all that evidence cited in her opinion. The plaintiff is entitled to these rulings being affirmed. And also, because this is basically started out under the Illinois Wage Payment Act, that act specifically provides for attorney fees and costs to Dr. Patel for having bring this. That's 820-ILCS, section 115-14. So, any questions for me on anything, your honors? None for me. Thank you very much. Thank you. Okay. Mr. Horner, back to you. Well, I would just say the record speaks for itself. The CPA testified that there was a decline due to economic conditions in Dr. Jones' departure from Illinois. Dr. Jones, we'll hear in moments, had moved to Arizona at the time Patel was hired and was there the whole time. I don't have anything else to add. Okay. Any questions? Thank you very much. Thank you very much. The matter is submitted. That's our last matter. So, courts and reasons. I'm sorry. There was one other appeal on this same case, your honors. It was on the issue of the community issue and the interest. Mr. Horner, if you could comment also. We had set those for argument together. So, I think, to my mind, that's been covered by the briefs. Anybody have anything to add, Mr. Horner, on that? Two things, your honor. Okay. Yesterday. One second. Let's get the time clock started again. Call it nine minutes. Go ahead. Yesterday. And I apologize, I don't have the precise name, but the United States Supreme Court made a ruling. I believe the case is Buckheimer. Barton Orford. Okay. You've seen that. And it said, basically, that when there's a community issue, husband and wife are both liable. But in that case, both husband and wife had been sued. And I believe it was in California. It was a fraud case having to do with real estate. That's distinct from what we've got. What we have is the Shamrock case. It's instructive, that we've cited. Latin versus Shamrock, I call it. And it clearly says, in Arizona, if you're going to hold the community liable, the phrase plainly, okay, on a community debt or obligation, both spouses must be sued jointly. Does that apply even to a case where the underlying judgment is from out of state, in a non-community property state? Well, you see, they lived in Arizona, though, when this matter was filed in Illinois. So we contend that Mr. McClellan, or the plaintiff, was charged with notice of what the Arizona law would be. They should have checked. They could have added Mrs. Jones back there. They say, well, Rule 11, you know, we would have got sanctioned. No, you wouldn't. You say, look, these Arizona people, they've got this community property thing, and we've got to sue Mrs. Jones also, even though she had nothing to do with anything. And that would have got passed the Rule 11. But the Supreme Court of Arizona is quite clear. You must join both spouses when asserting a cause of action, whether by complaint, counterclaim, cross-claim, or third-party complaint. Now, see, that was done in the Supreme Court case just decided yesterday, but it was not done here. And it had to do with, well, what is a claim? Well, it's something that exists already. They're claiming they have damages due right here and right now. And it went on to say Shamrock was a little bit different. They were trying to get attorneys to use in the community, which was granted. But otherwise, I think the brief is sufficient, unless the panel has some questions. Okay. Then there was a third issue about the interest rate. Anything you wanted to add on the interest rate question? I think that's submitted, Your Honor. It's sufficiently brief. Okay, thank you. Well, I'm back to you. Yes, thank you, Your Honors. First of all, Mr. Horner is jumping way ahead of himself with the Shamrock case, which we've shown has no applicability to this at all. The judge made specific rulings in finding it was a community debt. The very first one was that the defendants had admitted it was a community obligation, both in filing their bankruptcy petition and in answering the complaint. They did not contest that at trial. They have not contested that in their reply brief. The next thing is that when you say they admitted in the answer, Mrs. Jones was not a defendant. It was Dr. Jones and the community, correct? That's correct. But Mrs. Jones had been served with the complaint as part of the community. And, in fact, Mr. Horner had come in and moved to dismiss her personally when she wasn't even part of the case, said nothing about the community. So that should end the discussion right there, except if you go further on that, is that there were other findings the judge made. There were other independent rulings that it was a community obligation. She relied on Lorenz-Auxier financial, the debt incurred by one spouse while acting for the benefit of the marital community as a community obligation. She found that during the trial, my client established that the defendant provided the primary, if not sole, source of income for his wife and children, and the debt was incurred for the benefit of Dr. Jones and his family. Next, she found under ARS 25-215C, which provides that community property is liable for a spouse's debts incurred outside of Arizona during the marriage, which would have been community debts if incurred in Arizona. And the important thing to note about that is that we went through the case that was a union case, which found one of the things that you can't use Section D to obviate C. Otherwise, there would be, and that's the other thing they admitted, they admitted that this debt was entitled to full faith and credit, yet they try and raise Part C of the Arizona statute to say, oh, no, it's not entitled to full faith and credit. They admitted that in the joint pretrial statement. So they didn't contest any of that. They didn't contest the judge's other finding that the community nature of a debt is determined by the intent or purpose of the spouse who incurred the debt. And she said, here's what the judge said. Further, neither of the Joneses has at any point in time seriously disputed that the debt was incurred by Dr. Jones with the intent of benefiting the community and for a community purpose. Rather, Dr. Jones raises a series of procedural arguments to support his position that the debt at issue is not a community obligation, each of which the court will address in turn. So even before you get to their argument about D, she had already ruled that the facts established it was a community obligation. And then furthermore, our position is their argument that D can be imposed on a foreign judgment they've waived because their argument under D is that D can be used to prevent an Arizona court from giving full faith and credit to a foreign state judgment. They waived that by admitting in the joint pretrial statement that the judgment of the Illinois court has not been appealed and is the final judgment entitled to full faith and credit. So even before we get to his argument that, oh, we need to look at D and Gagin doesn't apply, they've admitted it's a community obligation. The facts are shown as a community obligation. And as the judge said, they're trying to use a procedural argument to say, oh, no, you can't come after us in Arizona, the community, when Dr. Jones has stated, I've got no personal assets. It's all community assets. And then the thing after that was, if you look at the Gagin case, it had nothing to do with a foreign judgment. The issue was simply if is a finding of a court for attorney fees owed by one spouse, is that an action under D where you have to sue both spouses? And they said it's not an action. D doesn't apply. They actually referred to the National Union case and did not distinguish it, referred to it as that being the law in Arizona. That was the only case that has dealt with this issue of a foreign judgment. And I noted that the Arizona Supreme Court did not take the National Union case on appeal. No one dissented from that not being taken. So that's the law in Arizona. Gagin has nothing to do with it. D has nothing to do with it because you can't say that D overrides C, which specifically was done for a situation where someone is Dr. Jones and it was later followed up by the Avendure case where someone such as Dr. Jones says, well, I'm going to start a business in Illinois. I live in Illinois. I'm going to hire someone in Illinois. And then after I hire him and he begins working, I'm going to move to Arizona but say, oh, you can't touch my community property.  is because Dr. Jones was found to be a statutory employer as an officer of the corporation. She was not an officer or agent of the corporation. She could not have been found liable under the Illinois Wage and Payment Act. In Illinois, we have a Rule 137 similar to 11. We've been bounced on that. But even more than that, at the time the suit was filed, Dr. Jones, through the corporation, not Dr. Jones personally, but the corporation had assets more than sufficient to satisfy the judgment. And those were shown through the bankruptcy documents we attached. What did he let do? He let those be dealt with in the bankruptcy when they clearly weren't part of it to be able to work some sort of settlement on those. So, summary, you can't admit something in multiple ways. You can't have the factual findings go against you and then come in on a procedural matter that clearly cannot apply because the section just before it, Section C before D, says here if this happens outside of Arizona during the marriage, that would have been a community obligation here, the community property is liable. Thank you. Any questions? I've got three seconds to answer. All right. I think we have no questions. All right. Thank you. I guess I need to go back to you for a brief period, Mr. Horner, if you have anything to add. A couple of things. There's a two-step test whether you can get a community property. First, was the debt a community obligation? Now, that's not disputed. It was scheduled. I didn't file the schedules. I wouldn't represent the debtors in the seven. But it's community property debt. Okay, that's sworn testimony, no problem. Then what? You've got this full faith and credit judgment. Okay, what are you going to do with it? Have you sued Mrs. Jones? That's the second test. The answer is no. We've just seen in Shamrock you cannot get at the community property. The purpose of requiring a suit against the spouse is to allow her to say, no, this is not a community debt, but she's admitted it's a community debt. So what's the purpose of requiring a suit against her? Well, the purpose of the statute, Your Honor, is to put everybody on notice that we're going to go after community property because you don't have to. You can make a decision. We're just going to go after the husband's separate property. And if you just sue him only and you should have sued the wife but you don't, then that's what you're stuck with. So that's what we say. Mrs. Jones was indeed dismissed early on in the case. We contend that Gagan, the Ninth Circuit case, has been overruled by the Shamrock case of the Supreme Court of Arizona. And let's see. I don't really have anything else to add. 25215D, we do believe, drives the bus. Okay, thank you. I think now we're done. Very good. The matter is submitted and the court is recessed. Thank you, Your Honors. All rise. This court is adjourned.
judges: Faris, Lafferty, and Spraker